**VICTORIA L. FRANCIS**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**2601 2nd Ave. North, Suite 3200**
**Billings, MT 59101**
**Phone: (406) 247- 4633**
**FAX: (406) 657- 6058**
**E-mail address: victoria.francis@usdoj.gov**

**ATTORNEY FOR DEFENDANT**
**NATIONAL PARK SERVICE**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **STEPHANIE DANIEL, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**NATIONAL PARK SERVICE and DOES 1-10,**<br><br>**Defendants.** | **CV 16-18-BLG-SPW**<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |

Plaintiff has filed a Third Amended Complaint which appears to have been filed to address the failure to allege causation or a nexus needed for standing in certain added paragraphs. See Dkt. 30,¶ ¶ 5-7. The remainder of the Third Amended Complaint (Dkt. 30) is virtually identical to the Second Amended

Complaint except for paragraph numbering. The NPS does not concede that Plaintiff has standing, but agrees that affidavits or discovery will need to be filed with the Court under a summary judgment standard to address the issue of standing under a separate motion.

Still at issue, however, is the lack of a clear and unequivocal waiver of sovereign immunity under the FCRA and FACTA to sue the National Park Service for damages under 15 U.S.C. §1681n for statutory and punitive damages, and failure to state a claim at all under 15 U.S.C. §1681c(g). Plaintiff's response brief on these issues relies almost solely on the Seventh Circuit case of *Bormes v. United States*, 759 F.3d 793 (7th Cir. 2014). The court in *Bormes*, however did not address the argument that the truncation section only applies to commercial or business transactions, not non-profit governmental entities. In addition, the court in *Bormes* is wrong in its analysis of the waiver of sovereign immunity. Therefore, this case should still be dismissed for lack of jurisdiction and failure to state a claim.

**A. Plaintiff's Brief Fails to Address "Transaction of Business" Requirement.**

The Department of the Interior, National Park Service is not a profit motivated business, but a government agency whose mission is to administer the National Park System for the benefit of the people. Plaintiff's entire case is based on the alleged violation of the truncation requirement for credit or debit card receipts under 15 U.S.C. § 1681c(g)(1), which provides: "Except as otherwise provided in

this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." § 1681c(g)(1) (emphasis added). Plaintiff's Third Amended Complaint still mistakenly misquotes the statute and omits the "for the transaction of business" language. (Dkt. 30, ¶ 26, p. 9). As noted in the NPS brief in support of its motion to dismiss (Dkt. 24, pp. 3 & 21), neither FACTA nor the FCRA defines the term or phrase "transaction of business." The primary definition in *Black's Law Dictionary* defines "business" as: "[a] commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain." *Black's Law Dictionary*, 226 (Bryan A. Garner ed. 9th ed. West 1999).

The National Park Service is not a commercial enterprise carried on for profit or seeking commercial gain. The plain language of § 1681c(g)(1) therefore does not apply to the National Park Service, and Plaintiff fails to state a claim. It likewise would not apply then to states, like Montana, or local counties or cities that are not profit motivated businesses, but rather serve the public with limited funds needed to meet a variety of public needs including safety, infrastructure, health and other public needs.

This concern, that governmental entities not operating for profit should not be subject to statutory violations and punitive damages in class action suits under

FACTA, was referenced in *Rowden v. Pacific Parking Systems, Inc., and the City of Laguna Beach*, 282 F.R.D. 581 (C.D. Cal., July 2, 2012). The Plaintiff in *Rowden* brought class action litigation which included the City of Laguna Beach, for violations of FACTA asserting that parking receipts at a city parking lot had printed the expiration date on the receipt. Plaintiff estimated the class at 100,000. Plaintiff sought statutory damages of $15 million from a small municipality under § 1681n for violations of § 1681c(g)(1). The court in *Rowden* denied class certification for a number of reasons. In doing so it noted in its analysis that Laguna Beach does not have the financial wherewithal to satisfy and survive an adverse $15 million judgment, which is twice the balance of its general fund reserves and more than the year's entire budget for the police department. *Rowden*, 282 F.R.D. at 587. It also commented that the court was only aware of one other FACTA decision in the public context, *Medrano v. Modern Parking, Inc., et al*, No. CV 07-2949 (C.D. Cal. Sept. 17, 2007), which found several reasons to deny class certification, including the size of the potential award ($12.5 to $125 million), which would cripple the City of Pasadena's ability to provide public services. *Rowden*, *i.d.* at 587, n. 8. The court in *Rowden* also pointed out that neither party had raised the issue of whether Laguna Beach even qualified as a "merchant" within the meaning of FACTA, but in light of its denial of class certification it determined that it "need not and does not address the issue." *Id.* at 583, n. 1.

Giving meaning to the phrase "for the transaction of business" is important. Congress in FACTA could just have applied the truncation requirement to any credit or debit card transaction. It did not. It is only credit or debit cards used "for the transaction of business" that are subject to the truncation requirements under FACTA. Since non-profit governmental entities are not transacting business, it is not unreasonable to surmise that Congress intentionally excluded any reference to punitive and statutory damages on governmental entities for violations of the truncation requirements, and that it foreseeably did not want to trigger a catastrophic impact on public resources. Here Plaintiff appears to still seek a class of 300 million NPS system visitors. (Dkt. 30, ¶ 8) Statutory damages at even the low end of $100 per consumer is an exponential diversion of public resources.

Therefore, § 1681c(g)(1) should not apply to noncommercial public entities which are not engaged in transacting business, defined above as a commercial enterprise for profit. This means that Plaintiff has not stated a claim at all. The Seventh Circuit in *Bormes*, 759 F.3d 793, did not address this issue, because it was not raised by the United States in that case. Rather, the Seventh Circuit found that there was no claim because the United States did not print any receipt, but rather sent only an e-mail that contained the expiration date. *Bormes*, 759 F.3d at 797-98. The *Bormes* Court therefore found that *Bormes* had no claim against the United

States and affirmed the dismissal. This Court should dismiss as well because the NPS as a non-profit public entity is not transacting business.

**B. No Clear and Unequivocal Waiver of Sovereign Immunity Supports Dismissal.**

Several courts have found that there is no clear and unequivocal waiver of sovereign immunity under the FCRA or FACTA, 15 U.S.C. § 1681n, for statutory or punitive damages for a suit against the United States or its agencies. (See cases cited in opening brief, Dkt. 24, p. 8) The courts with binding precedent over this Court, the Ninth Circuit and the Supreme Court, have not issued a decision finding a clear and unequivocal waiver of sovereign immunity for suit against the United States or Federal agencies for statutory damages, punitive damages, or actual damages under § 1681n or § 1681o. *See United States v. Bormes*, 133 S.Ct. 12, 20 (2012) ("We do not decide here whether FCRA itself waives the Federal Government's immunity to damages actions under § 1681n.").

Plaintiff relies primarily on the Seventh Circuit decision in *Bormes v. United States*, 759 F.3d at 793 (7th Cir. 2014), issued after remand, which did in *dicta* find a waiver of sovereign immunity. The Seventh Circuit decision on the waiver of sovereign immunity is *dicta* because it found that there was no violation of the FACTA truncation requirements on remand, because there was no printed receipt.

There is no clear and unequivocal waiver of sovereign immunity against the United States or Federal agencies for money damages under § 1681n.  The *Bormes* decision states that Congress need not add "we really mean it!" to make statutes effectual.  *Bormes*, 759 F.3d at 796.  However, the cases it cites for this proposition do not apply to waivers of sovereign immunity against the United States for money damages.  *Id.* at 796 (citing *Swain v. Pressley*, 430 U.S. 372, 378 & n. 11 (1977)).  *Swain* does not address waivers of sovereign immunity for money damages against the United States.   Rather *Swain* dealt with a District of Columbia Code provision, which created in essence a 28 U.S.C. § 2255 parallel proceeding for criminal defendants, and also prohibited a writ of habeas corpus from being brought in the district court unless the defendant could show that the remedy afforded was inadequate or ineffective.  The Supreme Court found that the District of Columbia § 2255 equivalent is commensurate with habeas corpus relief, and therefore did not suspend the writ of habeas corpus within the meaning of Art. I, s 9, cl. 2. *Swain*, at 430 U.S. 382-384.  Thus, *Swain* does not address waivers of sovereign immunity for money damages at all, but rather collateral attack on criminal judgments and the judges that can decide the collateral issues.

The other case cited by *Bormes*, 759 F.3d at 796, for the proposition that Congress need not state whether it really means it, is *Harrison v. PPG Industries, Inc.*, 446 U.S. 578 (1980).  However, *Harrison* also does not address waivers of

sovereign immunity for money damages, but rather whether the Clean Water Act provided for direct review in a federal Court of Appeals. The Court in *Harrison* found that the statute provided for direct federal Court of Appeals review of certain actions taken by the Administrator of the EPA. *Harrison*, 446 U.S. at 594. Thus, this case too does not address waivers of sovereign immunity for money damages.

Rather, a long line of Supreme Court precedent requires Congress to in essence state that "it really means it." Over and over again the Supreme Court states that the waiver of sovereign immunity must be clear and unequivocal, and strictly construed in favor of the sovereign. *See United States v. Mitchell*, 445 U.S. 535, 538-539 (1980); *United States v. King*, 395 U.S.1, 4 (1969); *Lane v. Pena*, 518 U.S. 187, 192 (1996), and many additional cases cited therein.

The Seventh Circuit in *Bormes*, also cited to *Department of Energy v. Ohio*, 503 U.S. 607, 615 (1992), acknowledging that it takes unequivocal language in the statute to waive sovereign immunity. *Bormes*, 759 F.3d at 796. However, *Department of Energy v. Ohio* highlights how an unequivocal waiver is effected, by addressing the citizen-suit provisions of the Clean Water Act which provide for example at 33 U.S.C. § 1365(a)(1), that any citizen may commence a civil action on his own behalf—"(1) against any person (<u>including . . . the United States.</u>" *Ohio*, 503 U.S. at 615(emphasis added). Although *Bormes* , 759 F.3d at 796, states that it takes unequivocal language in a statute to waive the sovereign immunity of the

United States, not a committee report, the opposite is not true.  If the statute does not use the term "United States" or "Federal" government, and the legislative history shows no consideration whatsoever of a waiver of the sovereign immunity of the United States or Federal agencies for money damages under the applicable provision, the legislative history as set forth in the opening brief shows there was no clear intent to waive the immunity.

Here, the Plaintiff relies on the definition of "person" at 15 U.S.C.§ 1681a for a waiver of sovereign immunity.  Section 1681a defines person to mean "any individual, partnership, corporation, trust, estate, cooperative, association, government, or governmental subdivision or agency, or other entity."  But this definition was created in 1970 at a time when the statutory scheme did not provide damage provisions against "persons."  Rather, as originally enacted in 1970, the FCRA provided for damage actions against consumer reporting agencies and users of information.  Pub.L.No. 91-508, sec. 601,§ 616, 84 Stat. 1114, 1134 (1970). The definition of "person" does not state, for example that it includes the "United States" government or "Federal" agencies, and therefore does not "unequivocally waive the sovereign immunity of the United States or Federal agencies or show clear unambiguous Congressional intent.  The court in *Bormes* recognized that nothing in the legislative history of the 1996 amendments, which added § 1681n, indicated that Congress intended that the new private suit provisions waived federal immunity

(*Bormes*, 759 F.3d at 795). But it mistakenly assumed that Congress had already waived immunity in 1970, when in fact in 1970 it was the "consumer reporting agencies" and "users of information" who were subject to damages, not "persons."

The statutory and punitive damage provision at § 1681n, does not state that it applies to the "United States" or "Federal" agencies. The district court in *Echols v. Morpho Detection, Inc.*, 2013 WL 752629, at *5 (N.D. Cal. Feb. 27, 2013), got it right when it found that there was no clear and unequivocal waiver of sovereign immunity under the FCRA for money damages against the United States under § 1681n. *Echols* highlighted how Congress issues unequivocal waivers of immunity, and provided as an example that the Federal Tort Claims Act authorizes "claims against the United States, for money damages," 28 U.S.C. 1346(b)(1), or for example 42 U.S.C.§ 2000e-5(k) where the statute provides that "[i]n any action or proceeding under this subchapter . . . the United States shall be liable for costs the same as a private person." (emphasis added). The *Echols* court also highlighted that in a separate provision of the FCRA, Congress specifically asserted an express waiver in unequivocal terms when in 15 U.S.C.§ 1681u(i), now § 1681u(j), it stated "[a]ny agency or department of the United States obtaining or disclosing any consumer reports, records, or information contained therein in violation of this section is liable to the consumer. . .". *Echols*, 2013 WL 752629, at *5.

Adding to the lack of clarity in the waiver of sovereign immunity and increasing the ambiguity, is that the truncation provision Plaintiff files this case under applies only to persons who accept credit cards and debit cards "for the transaction of business." § 1681c(g)(1). For all of the reasons set forth in Section A above, the truncation section itself shows it does not apply at all, or at the very least is ambiguous and not a clear and unequivocal waiver as to a nonprofit noncommercial institution like the United States and the National Park Service.

The court in *Bormes* also thought it unremarkable that Congress would subject federal employees to criminal penalties in state court since the FCRA provides for criminal penalties as to "persons." *Bormes* at 796. But the point is not that a federal employee might be subject to criminal penalties – as they sometimes are under federal statutes. *See, e.g.*, 50 U.S.C. § 1809. The point is that a federal *agency* might be subject to such liability if it is assumed that the definition of "person" is a waiver of soverign immunity as it is applied to the criminal penalty section as under 15 U.S.C.§ 1681q and § 1681s(2)(C). As other courts have recognized the prospect of such liability has been considered untenable and "absurd." *United States v. Singleton*, 165 F.3d 1297, 1300 (10th Cir. 1999) (*en banc*); *see United States v. Cooper Corp.*, 312 U.S. 600, 609 (1941); *Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 854 (9th Cir. 2012).

CONCLUSION

The definition of "persons" under § 1681a(b) is not a clear and unequivocal waiver of sovereign immunity. Thus, this Court should not follow *Bormes v. United States*, 759 F.3d 793 (7th Cir. 2014). None of the statutes at issue here state that they apply to the "United States" or "Federal agencies." *See* §§ 1681a(b), 1681c(g)(1), and 1681n. None of the legislative history discusses the impacts of the statutory and punitive damages section on the United States or other state, local or tribal governments. The truncation statute itself does not use terminology that would likely apply to non-profit governmental entities. Therefore, this Court should dismiss this case for a lack of a waiver of sovereign immunity, and failure to state a claim.

**DATED** this 15th day of July, 2016.

MICHAEL W. COTTER
United States Attorney

/s/ Victoria L. Francis
Assistant U.S. Attorney
Attorney for Defendant National Park Service

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 2,728 words, excluding the caption and certificates of service and compliance.

DATED this 15th day of July, 2016.

/s/ Victoria L. Francis
Assistant U.S. Attorney
Attorney for Defendant National Park Service